# Exhibit 1

Electronically Filed by Superior Court of California, County of Orange, 08/21/2023 03:44:10 PM.
30-2023-01344560-CU-CO-CJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By R. Climer, Deputy Clerk.
Case 8:23-cv-01738-DOC-JDE    Document 1-1    Filed 09/18/23    Page 2 of 15    Page ID #:9

**SAMINI BARIC, APC**
Bobby Samini (SBN 181796)
Ignacio J. Lazo. (SBN 105945)
Andrew M. Sussman (SBN 112418)
650 Town Center Drive. Suite 1500
Costa Mesa. CA 92626
Telephone: (949) 724-0900
Fax: (949) 724-0901
Emails:  bobby.samini@saminilaw.com
         andrew.sussman@saminilaw.com
         ignacio.lazo@saminilaw.com

Attorneys for Plaintiffs, Christian Mack
and Lotus Domaine Management, LLC

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE

| | |
|---|---|
| CHRISTIAN MACK, an individual, and LOTUS DOMAINE MANAGEMENT, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> DAVID ROMAN, an individual, and DOES 1 – 50, inclusive, <br><br> Defendants. | CASE NO: 30-2023-01344560-CU-CO-CJC <br><br> UNLIMITED JURISDICTION <br> **Assigned for All Purposes** <br> Judge: Judge Michael Strickroth <br><br> **COMPLAINT FOR:** <br><br> **(1) BREACH OF CONTRACT;** <br> **(2) SLANDER;** <br> **(3) LIBEL;** <br> **(4) CONVERSION;** <br> **(5) NEGLIGENT BREACH OF CALIFORNIA PENAL CODE §115,** <br> **(6) VIOLATION OF CALIFORNIA PENAL CODE § 496** <br><br> Trial Date:    None Set |

---

1
COMPLAINT FOR BREACH OF CONTRACT, ET AL.

Exhibit 1, Page 8

**PERSONS AND ENTITIES RELATED TO OR AFFILIATED WITH THE FUND**

1. Lotus Domaine III LP (the "Fund" or the "Partnership") is, and was at all times herein relevant, a limited partnership organized under and doing business by virtue of the laws of the state of Delaware pursuant to a Second Amended and Restated Agreement of Limited Partnership of Lotus Domain II LP (the "Partnership Agreement"). Notwithstanding that the Fund is a Delaware entity, at all times herein relevant, all of the business of the Fund has been managed from the offices of plaintiff Lotus Domaine Management LLC in Newport Beach, California.

2. Lotus Domaine III GP LP ("LD III GP") is, and was at all times herein relevant, a limited partnership organized under and doing business by virtue of the laws of the State of Delaware. Pursuant to Article 2.1 of the Fund's Partnership Agreement, LD III GP is the "General Partner" of the Fund. In turn, pursuant to Article 6.1(a) of the Funds' Partnership Agreement, the management of the Fund is "vested exclusively in the General Partner [*viz.*, LD III GP] (acting directly or through its duly appointed agents or delegees)." Notwithstanding that LD III GP is a Delaware entity, at all times herein relevant, all of the business of the LD III GP has been managed from the offices of LDM in Newport Beach, California.

3. Lotus Domaine Associates LLC ("LDA") is, and was at all times herein relevant, a limited liability company organized under and doing business by virtue of the laws of the State of Delaware. Pursuant Paragraph 4 of the Agreement of Limited Partnership of Lotus Domaine III GP LP, LDA is the "General Partner" of LD III GP. Pursuant to that same document, the office of LDA is located in Newport Beach, California. Notwithstanding that LDA is a Delaware entity, at all times herein relevant, all of the business of the LDA GP has been managed from the offices of LDM in Newport Beach, California.

**IDENTIFICATION OF THE PARTIES TO THIS ACTION.**

4. Plaintiff Lotus Domaine Management LLC ("LDM") is, and was at all times herein relevant, a limited liability company organized under and doing business by virtue of the

laws of the State of Delaware.  Pursuant to Paragraph 4 of the Agreement of Limited Partnership of Lotus Domaine III GP LP, LDA is the "Limited Partner" of LD III GP.  Pursuant to that same document, the office of LDM is located in Newport Beach, California.  Notwithstanding that LDM is a Delaware entity, at all times herein relevant, all of the business of the LDM has been managed and conducted from LDM's offices in Newport Beach, California.  LDM is qualified to do business in the state of California and is domiciled in the state of California with its principal place of business in Newport Beach, California.

**5.** Plaintiff Christian Mack ("Mack") is, and was at all time herein relevant, an individual residing and doing business in Newport Beach, California.

**6.** Plaintiffs Mack and LDM are hereinafter referred to collectively as "Plaintiffs."

**7.** Defendant David Roman ("Roman") is, and was at all times herein relevant, an individual residing in the state of Massachusetts.

**8.** Plaintiffs do not know the true names and capacities of the defendants sued as DOES 1 through 50. Plaintiffs are informed and believe and on said basis allege that each such fictitiously named defendant engaged in and contributed to all of the wrongful acts alleged in this pleading.

**9.** Plaintiffs are further informed and believe that Roman and each of the DOE Defendants (collectively, the "Defendants") were each the agent or employee of each and every other Defendant and acted in the course and scope of that agency or employment with the full knowledge, consent, and agreement of each and every other Defendant.

## MANAGEMENT OF THE ENTITIES

**10.** Attached as Exhibit 1 and incorporated herein by this reference as though set forth in full is a true and correct photocopy of the Operating Agreement of Lotus Domain Associates, LLC (the "LDA Operating Agreement").

**11.** Paragraph 2 of the LDA Operating Agreement identifies Mack and Roman as its Initial Members  Moreover, Mack and Roman are, and at all times herein relevant have always

been, the only Members of LDA.  Paragraph 2 of the LDA Operating Agreement also identifies Mack and Roman as the "Managing Members" of LDA.  Mack and Roman are, and at all times herein relevant have always been, the only Managing Members of LDA.

12. Paragraph 2 of the LDA Operating Agreement defines the term "Majority in Interest" as meaning and referring to the "Members holding in the aggregate greater than fifty percent of the outstanding Units.  Schedule 1 to the LDA Operating Agreement specifies that Mack owns 65 units and Roman owns 35 units of LDA.  Consequently, at all times herein relevant, Mack has been the sole Managing Member of LDA who holds a Majority in Interest in LDA's Units.  Consequently, Mack is the sole Majority Managing Member of LDA

13. Paragraph 8(a) of the LDA Operating Agreement provides in part that "No Member other than the Managing Members shall have the right to approve or vote on any matter. . . ."  Paragraph 8(b) of the LDA Operating Agreement provides that, "Unless a greater vote is required by the Delaware Act, or the certificate of formation of the Company, the affirmative vote of a Majority in Interest of the Members entitled to vote shall be require to approve any proposed action."  Because Mack is the sole Majority Managing Member of the LDA, he has exclusive authority to control its actions.

14. Attached as Exhibit 2 and incorporated herein by this reference is a true and correct photocopy of the Operating Agreement of Lotus Domain Management, LLC (the "LDM Operating Agreement").

15. Paragraph 2 of the LDM Operating Agreement identifies Mack and Roman as its Initial Members  Moreover, Mack and Roman are, and at all times herein relevant have always been, the only Members of LDM.  Paragraph 2 of the LDM Operating Agreement also identifies Mack and Roman as the "Managing Members" of LDM.  Mack and Roman are, and at all times herein relevant have always been, the only Managing Members of LDM.

16. Paragraph 2 of the LDM Operating Agreement defines the term "Majority in Interest" as meaning and referring to the "Members holding in the aggregate greater than fifty percent of the outstanding Units.  Schedule 1 to the LDM Operating Agreement specifies that

Mack owns 65 units and Roman owns 35 units of LDA.  Consequently, at all times herein relevant, Mack has been the sole Managing Member of LDM who holds a Majority in Interest in LDA's Units.  Mack is the sole Majority Managing Member of LDM.

17. Paragraph 8(a) of the LDM Operating Agreement provides in part that "No Member other than the Managing Members shall have the right to approve or vote on any matter. . . ."  Paragraph 8(b) of the LDM Operating Agreement provides that, "Unless a greater vote is required by the Delaware Act, or the certificate of formation of the Company, the affirmative vote of a Majority in Interest of the Members entitled to vote shall be require to approve any proposed action."  Because Mack is the sole Majority Managing Member of LDM, he has exclusive authority to control its actions..

18. On March 13, 2020, LDM filed an Application to Register a Foreign Limited Liability Company (LLC) (the "Application") with the California Secretary of State.  The Application accurately identified the Street Address of Principal Executive Office as 4533 MacArthur Blvd., Suite 5068 Newport Beach CA 92660.  A true and correct photocopy of the Application is attached as Exhibit 3 and is incorporated herein by this reference as though set forth in full.

19. Pursuant to Article 5.1 of the Partnership Agreement, "The General Partner [*viz.*, LD III GP] may, on behalf of the Partnership [aka the Fund], appoint the Management Company to manage the affairs of the Partnership.  LD III GP has exercised that authority and appointed LDM as the de facto Management Company for the Fund.  At all times herein relevant, as the Majority Managing Member of both LDA and LDM, Mack has acted as the de facto and de jure manager of the Fund.

**FIRST CAUSE OF ACTION BY PLAINTIFFS AGAINST ALL DEFENDANTS**

**(Breach of Contract)**

20. Plaintiffs repeat and reallege each and every allegation set forth in the preceding paragraphs and incorporate them herein by this reference as though set forth in full.

**21.**     In every contract or agreement there is an implied covenant of good faith and fair dealing.  This implied promise means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract.  Good faith means honesty of purpose without any intention to mislead or to take unfair advantage of another.  It means being faithful to one's duty or obligation.

**22.**     Plaintiffs have performed all of the significant things that the LDM Operating Agreement, the LDA Operating Agreement, the LD III, GP LP Operating Agreement, and the Fund's Partnership Agreement (collectively, the "Agreements") required them to do.  All of the conditions required for Defendants' performance have occurred.

**23.**     In 2023, it came to light that the Managing Members for LDM, LDA, and the Fund had received and relied in good faith upon erroneous advice of James Joshua Armstrong ("Josh"), the general counsel for the Fund.  A dispute arose between Mack and Roman concerning how the Fund should respond to certain unwarranted claims asserted by outside counsel.  Acting out of an abundance of caution and in consultation with certain of the limited partners of the Fund, Mack prepared a draft Remediation Plan, to remedy any perceived problems and ensure that the Fund was fully compliant with any and all governing laws and regulations.

**24.**     Plaintiffs are informed and believe and on said basis allege that, instead of honoring their obligations, Defendants went behind Mack's back, approached some of the limited partners of the Fund, and fabricated a false narrative claiming that Plaintiffs had mismanaged the Fund.

**25.**     Plaintiffs are informed and believe and on said basis allege that, as part of Roman's campaign to usurp Mack's rights as the Majority Managing Member of LDM, LDA, and the Fund, Defendants appropriated a copy of the draft Remediation Plan and other documents and have used it to support Defendants' false assertion that Roman possessed greater knowledge of the regulations governing the Fund's business and greater experience at managing an investment fund than Mack and that only Roman was acting in the best interests of the

investors in the Fund.  Through such fearmongering, Plaintiffs induced certain of the limited partners who were invested in the Fund to demand that Mack resign from managing the Fund.

**26.**   Not content to settle for spouting blatant lies, in violation of Roman's duties and limited rights as a mere Minority Managing Member of LDM and LDA, acting without Mack's knowledge or consent, Defendants transferred all the balances in such accounts (the "Funds") to one or more new accounts over which Roman exercised sole control.  By taking such action, Roman violated his duty to act fairly and in good faith.

**27.**   Defendants also usurped physical and electronic records and personal property (collectively, the "Records") and used them for their own purposes and advantage without Mack's consent.

**28.**   As a direct and proximate result of Defendants' misconduct, their breach of the LDM Operating Agreement, their breach of the LDA Operating Agreement, and their breach of the covenant of good faith and fair dealing, Plaintiffs have been damaged in an amount to be proven at trial in excess of $25,000.

**29.**   As a further direct and proximate result of Defendants' misconduct, Plaintiffs are entitled to an order requiring that Defendants restore the property and records misappropriated by Defendants and the entry an order enjoining Defendants from interfering with Plaintiff's management of the Fund.

### SECOND CAUSE OF ACTION BY MACK AGAINST ALL DEFENDANTS
### (Slander)

**30.**   Plaintiffs repeat and reallege each and every allegation set forth in the preceding paragraphs and incorporate them herein by this reference as though set forth in full.

**31.**   Mack is informed and believes and on said basis alleges that one or more of Defendants harmed Mack by making unprivileged oral statements to one or more of the Limited Partners and to other persons that Mack had mismanaged the Fund and that Roman possessed greater knowledge of the regulations governing the Fund's business and greater experience at

managing an investment fund than Mack. Those statements were false when made and Defendants knew or should have known they were false. Through such fearmongering, Plaintiffs induced certain of the Limited Partners who were invested in the Fund to demand that Mack resign from managing the Fund.

32. One or more of the Limited Partners and other persons to whom the unprivileged statements were made reasonably understood that such false statements were about Mack. One or more of those persons reasonably understood the statements to mean that, among other things, Mack had mismanaged the fund, violated regulations governing the management of the Fund, or was otherwise incompetent at his job.

33. Said statements were utterly false and Defendants either knew they were false at the time they made them or they had serious doubts about the veracity of such statements. Such wrongful conduct was a substantial factor in causing harm to Mack's name, property, business, trade, profession, occupation, or reputation and has resulted in shame, mortification, or hurt feelings.

34. Mack is also entitled to recover punitive or exemplary damages in an amount to be determined at trial and sufficient to punish and make an example of Defendants because they acted with malice, oppression, or fraud.

### THIRD CAUSE OF ACTION BY MACK AGAINST ALL DEFENDANTS
### (Libel)

35. Plaintiffs repeat and reallege each and every allegation set forth in the preceding paragraphs and incorporate them herein by this reference as though set forth in full.

36. Christian Mack is informed and believes and on said basis alleges that one or more of Defendants harmed Mack by making unprivileged written statements to one or more of the Limited Partners and to other persons that Mack had mismanaged the Fund and that Roman possessed greater knowledge of the regulations governing the Fund's business and greater experience at managing an investment fund than Mack. Those statements were false when made

and Defendants knew or should have known they were false. Through such fearmongering, Plaintiffs induced certain of the Limited Partners who were invested in the Fund to demand that Mack resign from managing the Fund.

37. One or more of the Limited Partners and other persons to whom the unprivileged statements were made reasonably understood that such false statements were about Mack. One or more of those persons reasonably understood the statements to mean that, among other things, Mack had mismanaged the fund, violated regulations governing the management of the Fund, or was otherwise incompetent at his job.

38. Said statements were utterly false and Defendants either knew they were false at the time they made them or they had serious doubts about the veracity of such statements. Such wrongful conduct was a substantial factor in causing harm to Mack's name, property, business, trade, profession, occupation, or reputation and has resulted in shame, mortification, or hurt feelings.

39. Mack is also entitled to recover punitive or exemplary damages in an amount to be determined at trial and sufficient to punish and make an example of Defendants because they acted with malice, oppression, or fraud.

## FOURTH CAUSE OF ACTION BY LDM AGAINST DEFENDANTS
### (Conversion)

40. Plaintiffs repeat and reallege each and every allegation set forth in the preceding paragraphs and incorporate them herein by this reference as though set forth in full.

41. By transferring the Funds in the bank accounts maintained or managed by LDM, and by taking control over and using the Records, Roman wrongfully exercised control over LDM's personal property. At the time when Roman transferred the Funds and seized the Records, LDM had a right to possess the monies in such accounts. Roman substantially interfered with Funds and the Records (collectively, the "Personal Property") by knowingly or intentionally taking possession or control of the Funds in the accounts using the Records for their

own purposes, thereby preventing LDM from having access to such Personal Property and refusing to return the Funds and Personal Property Defendants had transferred to themselves.

**42.** LDM did not consent to such transfer and was harmed thereby.

**43.** Roman's conduct was a substantial factor in causing LDM damages as alleged.

**44.** LDM is also entitled to recover punitive or exemplary damages in an amount to be determined at trial and sufficient to punish and make an example of Defendants, who acted as alleged with malice, oppression, or fraud.

### FIFTH CAUSE OF ACTION BY LDM AGAINST DEFENDANTS
### (Negligent Breach of California Penal Code §115)

**45.** Plaintiffs repeats and realleges each and every allegation set forth in the preceding paragraphs and incorporates them herein by this reference as though set forth in full.

**46.** On or about July 18, 2023, without the prior knowledge or consent of Mack, Defendants signed and caused a false Statement of Information, Limited Liability Company (the "SOI") to be filed electronically nominally on behalf of LDM with the office of the California Secretary of State.

**47.** The SOI was materially false and Defendants knew it to be false at the time it was filed because: (a) it falsely changed the registered street address of the Principal Office of LDM from 4533 MCARTHUR BLVD STE 5068, NEWPORT BEACH, CA 92660 to 701 BRAZOS ST, 500, AUSTIN, TX 78701; (b) it falsely changed the registered mailing address of LDM from 4533 MCARTHUR BLVD STE 5068;, NEWPORT BEACH, CA 92660 to 701 BRAZOS ST, 500, AUSTIN, TX 78701; and (c) it deleted the name of Christian Mack as the "Manager or Member" of LDM and added the name of David Roman in its place. As a mere Minority Managing Member of LDM, Roman lacked authority to change the information reported to the California Secretary of State or to file the SOI without the prior consent of Mack, the Majority Managing of LDM. Defendants never sought such consent and Plaintiffs never provided or

acquiesced in such action. Defendants filed the SOI with the intent to defraud and to misrepresent their authority to act on behalf of LDM.

**48.** Defendant's conduct violated the provisions of California Penal Code §115, which criminalizes the filing of a false or forged instrument with any California public office with which a genuine instrument might be filed as allowed by California law.

**49.** Defendants owed LDM a duty to refrain from filing false or forged instruments on LDM's behalf with any California public office such as the California Secretary of State.

**50.** In doing the things alleged herein, Defendants breached that duty.

**51.** As a direct and proximate result of Defendants' causing the SOI to be filed with the California Secretary of state, LDM has been damaged in an amount to be proven at trial, but in no event less than $25,000.

## SIXTH CAUSE OF ACTION BY LDM AGAINST DEFENDANTS
## (Violation of Penal Code § 496)

**52.** LDM repeats and realleges each and every allegation set forth in the preceding paragraphs and incorporates them herein by this reference as though set forth in full.

**53.** In doing and failing to do the things alleged, Defendants received money and property of LDM and the other entities alleged herein which was stolen by Defendants or obtained by them in a manner constituting theft, knowing that the property had been stolen or so obtained by him. By so doing, Defendants violated the provisions of California Penal Code § 496(a), which criminalizes such conduct.

**54.** LDM has been injured and damaged by Roman's conduct as alleged herein. Accordingly, pursuant to California Penal Code §496(c), LDM is entitled to an award of treble damages, costs of suit and reasonable attorneys' fees.

## PRAYER FOR RELIEF

Wherefore, Plaintiff demands judgment against Defendants as follows:

**FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT:**

1. An order and judgment, including but not limited to a temporary restraining order, preliminary injunction, and permanent injunction requiring that Defendants restore the Property misappropriated by Defendants and enjoining Defendants from interfering with Plaintiffs' management of the Fund.

2. Damages in an amount to be proven at trial, but in no event less than $25,000;

3. Pre-judgment interest on Plaintiffs' damages at the maximum legal rate as allowed by law;

4. Costs of suit incurred herein; and

5. Such other and further relief as is proper.

**SECOND AND THIRD CAUSES OF ACTION FOR SLANDER AND LIBEL:**

1. Damages in an amount to be proven at trial, but in no event less than $25,000;

2. Prejudgment interest on Plaintiffs' damages at the maximum legal rate as allowed by law;

3. Punitive damages in a sum certain according to proof and sufficient to punish and make an example of Defendants;

4. Costs of suit incurred herein;

5. Such other and further relief as is proper.

**FOURTH CAUSE OF ACTION FOR CONVERSION:**

1. Damages in an amount to be proven at trial, but in no event less than $25,000;

    **2.**    Prejudgment interest on Plaintiffs' damages at the maximum legal rate as allowed by law;

    **3.**    Punitive damages in a sum certain according to proof and sufficient to punish and make an example of Defendants;

    **4.**    Costs of suit incurred herein; and

    **5.**    Such other and further relief as is proper.

**FIFTH CAUSE OF ACTION FOR NEGLIGENCE:**

    **1.**    Damages in an amount to be proven at trial, but in no event less than $25,000;

    **2.**    Prejudgment interest on Plaintiffs' damages at the maximum legal rate as allowed by law;

    **3.**    Costs of suit incurred herein; and

    4.    Such other and further relief as is proper.

**SIXTH CAUSE OF ACTION FOR VIOLATIONS OF PENAL CODE §496:**

    **1.**    Treble damages in an amount to be proven at trial, but in no event less than $25,000;

    **2.**    Prejudgment interest on Plaintiffs' damages at the maximum legal rate as allowed by law;

    **3.**    Reasonable attorney' fees;

    **4.**    Costs of suit incurred herein; and

**5.** Such other and further relief as is proper.

DATED: August 21, 2023          **SAMINI BARIC, APC**

By: _____
    Bobby Samini
    Ignacio J. Lazo
    Andrew M. Sussman
    Attorneys for Plaintiffs,
    Christian Mack, and Lotus
    Domaine Management, LLC